**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
UNITED STATES OF AMERICA                 )
                                                    )
v.                                                  )  Magistrate Case No. 19-0016 (DAR)
                                                    )
DUSTIN MICHAEL LIVESAY,                   )
                                                    )
Defendant.                                       )
_____)

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant Dustin Michael Livesay ("Defendant"), through his counsel, has requested that

he be temporarily released from pretrial detention due to the ongoing coronavirus pandemic.  *See*

Emergency Mot. for Immediate Release to Home Confinement ("Emergency Motion"), ECF No.

34.  Upon consideration of the relevant filings, the Emergency Motion is Denied.[1]

### I.   Background

Defendant is charged by criminal complaint with one count of knowingly receiving and

distributing child pornography, in violation of 18 U.S.C. § 2252(a)(2).  *See* Crim. Complaint

("Compl."), ECF No. 1.  Defendant was arrested in January 2019 and he appeared before a

magistrate judge in the Eastern District of Missouri.  *See* Rule 5(c)(3) Documents at 1-3, ECF

---

[1] The relevant filings are: Emergency Motion; the Government's Opposition to
Defendant's Request for Review of Order of Detention ("Gov's Opp'n"), ECF No. 35;
Defendant's Reply to Government's Opposition to Defendant's Emergency Motion for
Immediate Release to Home Confinement ("Def's Reply"), ECF No. 36; Defendant's
Supplement to Defendant's Emergency Motion for Immediate Release to Home Confinement
("Def's Suppl."), ECF No. 43; Sealed Exhibits to Def's Suppl., ECF No. 44, Government's
Opposition to Defendant's Supplemental Motion for Emergency Release (Gov's Opp'n to Def's
Suppl."), ECF No. 45; Defendant's Second Supplement to Defendant's Emergency Motion for
Immediate Release to Home Confinement ("Def's Second Suppl."), ECF No. 46; and June 16,
2020 Pretrial Services Report ("June 2020 Pretrial Report"), ECF No. 47.

No. 2.  Defendant was then transferred to the District of Columbia, and he had his initial appearance in this jurisdiction before Magistrate Judge G. Michael Harvey on February 28, 2019. *See* Feb. 28, 2019 Minute Entry.  At that time, Magistrate Judge Harvey granted the government's oral motion for a detention hearing.  *See id.*  The detention hearing has been continued upon Defendant's request or with his consent since that time, and he has remained held without bond pending trial.[2]  On March 13, 2020, the President of the United States declared a national emergency due to the novel coronavirus, a virus that causes the COVID-19 disease.  *See* Proclamation No. 9994, 85 Fed. Reg. 15,337 (Mar. 13, 2020).  Thereafter, Defendant filed the pending Emergency Motion requesting that he be released from pretrial detention to home confinement "until such time that the D.C. Department of Corrections can assure inmates that the facility is reasonably free from exposure to the virus."  Emergency Motion at 1.  He proffered that he has Type II diabetes[3] and asthma, and that these conditions make him more susceptible to the coronavirus.  *See id.*  The United States opposed this request, arguing that Defendant's release was not warranted by the Bail Reform Act under either the four statutory factors or the temporary release provision.  Gov's Opp'n at 3–6, 10 n.2.  In response,

---

[2] *See* March 9, 2019 Minute Entry; March 19, 2019 Minute Entry; May 1, 2019 Minute Entry; June 11, 2019 Minute Entry; Motion to Continue, ECF No. 5; July 17, 2019 Order; Motion to Continue, ECF No. 8; Aug. 13, 2019 Order, ECF No. 9; Motion to Continue, ECF No. 10; Sept. 17, 2019 Order, ECF No. 11; Motion to Continue, ECF No. 13; Oct. 15, 2019 Order, ECF No. 14; Motion to Continue, ECF No. 15; Nov. 19, 2019 Order, ECF no. 16; Motion to Continue, ECF No. 17; Dec. 3, 2019 Order, ECF No. 18; Consent Motion, ECF No. 19; Dec. 18, 2019 Order, ECF No. 20; Motion to Continue, ECF No. 21; Jan. 3, 2020 Minute Order; Motion to Continue, ECF No. 23; Feb. 3, 2020 Order, ECF No. 24; Motion to Continue, ECF No. 26; Feb. 21, 2020 Order, ECF No. 28; Motion to Continue, ECF No. 29; March 10, 202 Order, ECF No. 30; Motion to Continue, ECF No. 31; March 17, 2020 Order, ECF No. 33; Motion to Continue, ECF No. 37; April 3, 2020 Order, ECF No. 39; Motion to Continue, ECF No. 40; May 5, 2020 Order, ECF No. 42; June 9, 2020 Minute Entry.

[3] The Emergency Motion stated that Defendant has Type I diabetes, but later filings indicate that he has Type II diabetes.  *See, e.g.*, Def.'s Suppl. at 5.

Defendant clarified that he was not seeking a detention hearing, and also argued that his continued detention at the D.C. Jail violated his constitutional rights.  Def.'s Reply at 1.

On May 26, 2020, Defendant filed a supplement to his motion, noting that he had contracted the coronavirus.  Def.'s Suppl. at 1.  Defendant again indicated that he requested his release pursuant to 18 U.S.C. § 3142(i), which provides for "the temporary release of the person" in certain circumstances.  The United States continued to oppose Defendant's request for release.  *See* Gov's Opp'n to Def's Suppl.  The undersigned began a hearing on Defendant's Emergency Motion on June 9, 2020, and the hearing was continued to and concluded on June 15, 2020.  *See* June 9, 2020 Minute Entry; June 15, 2020 Minute Entry.  During the hearings, counsel for Defendant reiterated that the request was for Defendant's temporary release during the coronavirus pandemic, but agreed that the matter could be considered a detention hearing.  At the conclusion of the hearing the undersigned took the Emergency Motion under advisement.  In addition, the undersigned requested that an officer with the Pretrial Services Agency provide the Court with information on whether Pretrial Services in Missouri—where Defendant requested to reside—had the capability of monitoring Defendant's electronic devices.  *See* June 15, 2020 Minute Entry.  The Pretrial Services Agency filed a report responding to that request on June 16, 2020.  *See* June 2020 Pretrial Report.

## II.  Legal Standard

The Bail Reform Act provides for the detention of certain individuals pending trial.  *See* 18 U.S.C. § 3142.  Defendant is charged with a violation of 18 U.S.C. § 2252, which qualifies as a crime of violence under the Bail Reform Act.  *See* 18 U.S.C. § 3156(a)(4)(C).  As such, he falls within the category of defendants for whom the United States may request a detention hearing.  *See* 18 U.S.C. § 3142(f)(2)(A) (a judicial officer shall hold a detention hearing upon a motion by

the government where a defendant is charged with a crime of violence). In addition, if there is probable cause to find that Defendant committed an offense in violation of 18 U.S.C. § 2252(a)(2), a rebuttable presumption that no such release conditions exist is triggered. *See* 18 U.S.C. § 3142(e)(3)(E). At the conclusion of a detention hearing, if "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). If adequate conditions can be imposed, the defendant will be released pursuant to 18 U.S.C. § 3142(c).

A detention decision based upon the defendant's dangerousness to the community must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f); *see United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996) (per curiam). In contrast, a detention decision based upon a finding that no set of conditions will reasonably assure the defendant's appearance in court "need only be supported by a 'preponderance of the evidence.'" *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987) (quoting *United States v. Vortis*, 785 F.2d 327, 328–29 (D.C. Cir. 1986) (per curiam)). In determining whether a defendant should be released, the Court is to consider four statutory factors: "(1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Additionally, another provision of the Bail Reform Act states that a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be *necessary*

for preparation of the person's defense or *for another compelling reason*."  18 U.S.C. § 3142(i) (emphasis added).

### III.    Discussion

Defendant initially requested that he be released pursuant to 18 U.S.C. § 3142(i), but subsequently argued for release pending trial pursuant to 18 U.S.C. § 3142(c) as an alternative.  As these statutory provisions set different standards for release and detention, the Court will first address the proper standards for analyzing Defendant's request, and will then discuss why Defendant should not be released under either provision.

#### A.  Statutory Provisions Governing Release

The first issue before the Court is whether Defendant's release request should be evaluated under the four Bail Reform Act factors to determine whether release pending trial is justified under 18 U.S.C. § 3142(c), or under the temporary release provision codified at 18 U.S.C. § 3142(i).

During the hearing on June 15, 2020, the parties referred to another matter pending in this court, *United States v. Dhavale* ("*Dhavale*"), which was in a similar procedural posture as the instant matter when that defendant requested his release.  *See United States v. Dhavale*, No. 19-MJ-00092, 2020 WL 1935544 (D.D.C. Apr. 21, 2020).  As in the instant matter, the defendant in *Dhavale* conceded to his pretrial detention without having a detention hearing, until the time he requested his release due to the coronavirus pandemic.  *See id.* at 1.  The magistrate judge who heard the motion "construed defendant's motion as requesting: (1) defendant's release pending a detention hearing, or (2), in the alternative, an immediate detention hearing" and with no objection from the United States, held a detention hearing.  *Id.* at 2 (internal citation omitted). The magistrate judge ordered the defendant's release with conditions after weighing the statutory Bail Reform Act factors.  *See id.*  The United States appealed, and Chief Judge Howell found

that defendant should be detained pending trial in accordance with 18 U.S.C. § 3142(e), but that he should be temporarily released in accordance with 18 U.S.C. § 3142(i).  *See id.* at 3.

The undersigned finds that the instant request for temporary release is properly brought only after an initial detention decision is made.  The provision at 18 U.S.C. § 3142(i) authorizing a defendant's temporary release should be read in the context of the other requirements outlined in that sub-section.  The heading of sub-section (i) is "Contents of detention order," and the provision specifies the information that must be included "[i]n a detention order issued under subsection (e)."  18 U.S.C. § 314(i).  In addition, the language providing for the temporary release of a defendant is preceded by: "[t]he judicial officer may, *by subsequent order* . . ."  *Id.* (emphasis added).  Read fully, subsection (i) authorizes the release of a defendant who has already had a detention hearing.  As such, the undersigned construes the hearings on June 9 and 15, 2020 as having two components: first a detention hearing, and second, if the Court concluded that Defendant should be held without bond pending trial, a hearing on whether Defendant should temporarily be released.  To the extent the docket reflects that the case was called for a different type of hearing, it shall be edited accordingly.  *See* Fed. R. Cr. P. 36.  Defendant's arguments for release fail under each standard.

### i.      Release Under 18 U.S.C. § 3142(c)

In considering whether Defendant should be detained pending trial, the undersigned evaluated and weighed the four Bail Reform Act factors.  Three of the four factors favor pretrial detention, and when the factors are weighed together the undersigned finds that detention pending trial is warranted.

Defendant is charged with an offense that generally triggers a rebuttable presumption of detention.  As in *Dhavale*, Defendant has not had a preliminary hearing through which a judicial

officer could determine whether there was probable cause that Defendant committed the charged offense.  *See* Order, *United States v. Dhavale*, No. 19-mj-0092 (June 15, 2020), ECF No. 62 (continuing the scheduled preliminary hearing to a later date).  However, unlike in *Dhavale*, Defendant has not conceded that probable cause exists which would trigger the rebuttable presumption.  *See Dhavale*, 2020 WL 1935544, at *3.  Thus, the undersigned declines to apply the rebuttable presumption of detention in the instant matter, but finds that, nevertheless, Defendant's detention pending trial is warranted.

The nature and circumstances of the charged offense weighs heavily in favor of pretrial detention.  Defendant is charged with receiving and distributing child pornography.  That is a very serious offense which victimizes the most vulnerable members of society.  This charge carries a mandatory minimum term of incarceration of five years, with a maximum term of twenty years; the severity of that penalty reflects the gravity of the offense.  Defendant is accused of participating in multiple online chat groups in which child pornography was shared.  He also allegedly sent multiple pornographic images of children to members of the online group and directly to an undercover officer who was in the group.  *See* Statement of Offense ("Statement of Offense") at 1–2, ECF No. 1-1.  In addition, Defendant told the undercover officer that he had sexually abused his minor cousin and sent a non-pornographic image of his purported cousin to the undercover agent.  *Id.* at 1–2.  Notably, Defendant also allegedly sent a link to the undercover officer that had dozens of videos depicting the sexual abuse of young children, including toddlers, as a "down payment" to try to solicit a nude picture of the undercover's purported minor child.  *Id.* at 2.  Although Defendant is not charged with an offense relating to the production of child pornography, this request shows that his alleged involvement in child victimization went beyond the passive viewing of child pornography and

included soliciting the production of it.   For these reasons, this factor weighs heavily in favor of pretrial detention.

The weight of the evidence against Defendant is also strong, thus the second statutory factor favors pretrial detention.  As discussed above, Defendant came to the attention of law enforcement through his involvement in an online group involved in sharing child pornography. Through various law enforcement techniques, officers were able to connect Defendant to the account that had sent the images and link to the undercover officer.  *Id.* at 2-4.  When questioned during a non-custodial interview, Defendant admitted to saving and sharing child pornography, including the images and link that was sent to the undercover officer.  *Id.* at 4.  The combined weight of the electronic evidence against Defendant and his admissions to law enforcement make this factor weigh heavily in favor of pretrial detention.

Defendant's history and characteristics favor release.  Defendant is 29 years old and has no prior convictions and only one prior arrest.[4]  *See* Mar. 2019 Pretrial Report,  at 1.  He also appears to have been employed at the time of his arrest.  *See id.* at 2–3 (noting that he was employed by MSC Trucking as of his interview on January 25, 2019); Compl. at 4 (Defendant's mother advised law enforcement that Defendant was a truck driver).  Defendant also has medical conditions—Type II Diabetes and asthma—at least one of which makes him more susceptible to developing a severe case of COVID-19.[5]  In addition, Defendant has unfortunately contracted the

---

[4] The Pretrial Services Report indicates that Defendant is 28 years old, but the report was filed in March of 2019 and Defendant's reported birth date indicates that he is now 29 years old. *See* Mar. 1, 2019 Pretrial Services Report ("Mar. 2019 Pretrial Report"), ECF No. 3.

[5] *See People of Any Age with Underlying Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020) (noting that "[p]eople of any age with [Type 2 diabetes] are at increased risk of severe illness from COVID-19," and people who have moderate-to-severe asthma "might be at an increased risk for severe illness from COVID-19.") (last visited Jan. 29, 2021).

coronavirus, although it is unclear from the record how his condition progressed.  Defendant's underlying medical conditions, the uncertainty within the medical community as to whether the coronavirus can be re-contracted,[6] as well as the fact that he has now experienced the effects of the coronavirus, suggest that he would be highly motivated to avoid re-incarceration and would therefore be more likely to comply with release conditions.   Further, Defendant proffered that his father would allow him to stay at his residence in Missouri, and Pretrial Services verified that Defendant's father is a suitable custodian in accordance with their standards.  For these reasons, this factor favors release.

The nature and seriousness of the danger presented by Defendant's release favors detention.  Defendant allegedly was an active member of multiple online groups that shared child pornography, and he distributed pornographic images of minors to the group and directly to the undercover officer.  This undercover officer had presented himself to the online group as a dad from the group and told Defendant that he had a minor child.  Defendant attempted to solicit a pornographic image of the undercover officer's purported minor child; he sent a link containing dozens of videos depicting the sexual abuse of children as a type of "down payment" to receive such picture.  This heightened involvement in the child victimization community and attempt to procure a new pornographic image demonstrates the danger that Defendant's release poses.

In addition, Defendant's alleged crime is particularly insidious as it can be conducted in private places, such as a home, as it is committed electronically.  If Defendant were to be released within the District of Columbia area, the local Pretrial Services Agency would be unable

---

[6] *See Clinical Questions about COVID-19: Questions and Answers*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (last updated Jan. 25, 2021) ("The immune response, including duration of immunity, to SARS-CoV-2 infection is not yet understood. Based on what we know from other viruses, including common human coronaviruses, some reinfections are expected.") (last visited Jan. 29, 2021) (hereinafter CENTERS FOR DISEASE CONTROL AND PREVENTION).

to monitor his electronic devices or ensure he has no access to any, thus there is no feasible way for the court to monitor his compliance with release conditions that would limit his ability to engage in the viewing or sharing of child pornography.  On the other hand, if Defendant were released to his father's residence in Missouri, the Pretrial Services Agency for the Eastern District of Missouri would be able to monitor his electronic devices.  *See* June 2020 Pretrial Report at 2.  Although these capabilities mitigate some of the risks associated with Defendant's release, due to the ubiquitous nature of electronic devices and the fact that the Pretrial Services Agency in Missouri is not able to conduct in-home visits during the coronavirus pandemic, the undersigned finds this insufficient to adequately mitigate the risk that Defendant's release presents to the community.  *See id.*

Further, at the June 15, 2020 continued hearing, Defendant proposed that upon his release he travel from the District of Columbia to Missouri with his father in a rented vehicle.  This unsupervised period of travel presents too great a risk that Defendant would engage in conduct similar to that with which he is charged or he would be able to surreptitiously acquire an electronic device for use at a later time.  For these reasons, this factor also weighs in favor of detention.

In sum, three factors weigh in favor of detention, and one factor weighs in favor of release.  On balance, the factors strongly favor Defendant's detention pending trial.  Therefore the United States has carried its burden of demonstrating that no release condition or combination of conditions would adequately assure the safety of the community if Defendant

were released, and the undersigned finds that Defendant should be held without bond pending trial.

### ii.    Temporary Release Pursuant to 18 U.S.C. § 3142(i)

Having thus concluded that Defendant shall remain held without bond pending trial, the next issue is whether his temporary release pursuant to 18 U.S.C. § 3142(i) is justified.  Even assuming that Defendant's father is an "appropriate authority," to whom Defendant could be released, the undersigned finds that Defendant's release—even temporarily—presents too great a risk of danger to the community, thus his continued detention is warranted.  18 U.S.C. § 3142(i); s*ee also United States v. Lee*, 451 F. Supp. 3d 1, 10 (D.D.C. 2020) (noting part of the statutory analysis under 18 U.S.C. § 3142(i) was whether the proposed custodian was an "appropriate person" under the statute and comparing two cases with divergent outcomes).

The burden of justifying his temporary release lies with Defendant.  *See Lee*, 451 F. Supp. at 5 (quoting *United States v. Stephens*, 447 F. Supp. 3d 63, 67 (S.D.N.Y. 2020)) ("It is clear beyond cavil that '[a] defendant has the burden of showing that temporary release is "necessary" under Section 3142(i).'").  Judges in this Circuit have taken varying approaches to analyzing a request for temporary release.  C*ompare, e.g.*, *United States v. Davis*, No. 19-CR-292 (JDB), 2020 U.S. Dist. LEXIS 68317, *6 (D.D.C. Apr. 6, 2020) (quoting *United States v. Clark*, 448 F. Supp. 3d 1152, 1157 (D. Kan. 2020)) (listing some specific factors courts have considered in analyzing temporary release requests), *with Dhavale*, 2020 WL 1935544, at *6 (analyzing defendant's health conditions and the situation at the detention facility).  However, the consensus appears to be that these assessments must be made on a case-by-case basis.  *See e.g.*, *United States v. Riggins*, 456 F. Supp. 3d 138, 150 (D.D.C. 2020) (citing *Lee*, 451 F. Supp.

at 4, for the proposition that defendant had not presented "individualized reasons" for why he should be released).

Defendant proffered that he has Type II diabetes and asthma and he cited to guidance from the Center for Disease Control (CDC) for the proposition that "[t]hese are serious medical conditions that make him susceptible to contracting the COVID-19 virus."  Emergency Motion 1 (internal citation omitted).  Unfortunately, Defendant has also contracted COVID-19.  *See* Def's Suppl. at 1.  At this time, it is unclear whether an individual can contract the virus more than once; thus in evaluating Defendant's request, the undersigned took the risk of the coronavirus into consideration as if it could again infect Defendant.[7]  Even assuming that these medical conditions place Defendant at an increased risk to contract COVID-19, "where a defendant does face a heightened risk, that is not the end of the analysis."  *Davis*, 2020 U.S. Dist. LEXIS 68317, at *6.  The ultimate question is "whether the defendant 'has presented such compelling reasons that effectively override or at least sufficiently counterbalance the findings that originally justified the pretrial detention order.'"  *Id.* at *9 (quoting *United States v. Boatwright*, No. 219-cr-00301-GMN-DJA, ⸺ F.Supp.3d ⸺, ⸺, 2020 WL 1639855, at *5 (D. Nev. Apr. 2, 2020)).

At the hearing, Defendant asserted that he could "self-quarantine" in his father's basement and that he could be monitored there.  However, Defendant's alleged criminal conduct was committed covertly and electronically, and could thus still be committed during his isolation.  In addition, Defendant's release plan included his unsupervised  travel from the District of Columbia to Missouri; as outlined above, this travel presents too great a risk that he would engage in similar conduct to that charged while traveling or would be able to covertly

---

[7] CENTERS FOR DISEASE CONTROL AND PREVENTION, *supra* note 6.

acquire electronic devices that could be used unbeknownst to the Pretrial Services Office in Missouri.  Even taking the serious risk of the virus into consideration, the undersigned finds that Defendant has not met his burden to justify his temporary release.

### B.  Release on Constitutional Grounds

Defendant also argued that "[e]ven if [his] pretrial detention were otherwise appropriate, continuing to detain [him] would violate his rights under the Due Process Clause."  Def's Suppl. at 7.  Although "it is a matter of precedent in this Circuit that the due process clause of the Fifth Amendment bears upon the conditions of pretrial confinement," the appropriate governing standard in cases is less clear.  *Compare Lee*, 451 F. Supp. 3d at 8  (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)) ("conditions violate the Fifth Amendment only if they (1) rise to an objective level of a 'serious' deprivation, and (2) result from the official's subjective 'deliberate indifference,'" *with Banks v. Booth*, 459 F. Supp. 3d 143, 152 (D.D.C. 2020) ("a pre-trial detainee need only show that prison conditions are objectively unreasonable in order to state a claim under the due process clause").  In *Banks*, "various inmates of the District of Columbia's Department of Corrections ("DOC") detained in the Central Detention Facility ("CDF") and the Correctional Treatment Facility ("CTF")" filed suit against the Director and the Warden of the DOC based on allegations that "the conditions of their confinement during the COVID-19 pandemic" were unconstitutional.  *Banks*, 459 F. Supp. 3d at 147.  In her memorandum opinion, Judge Kollar-Kotelly found that, as to the plaintiffs' Motion for a Temporary Restraining Order, the plaintiffs who were detained pending trial were likely to succeed on the merits of their constitutional claim under either the "objectively unreasonable" standard mentioned above (specifically, that "the [d]efendants knew or should have known that the jail conditions posed an excessive risk to [plaintiffs'] health"), or the standard that applies to defendants who were

detained after a conviction (specifically, "the jail conditions exposed [the plaintiffs] to an unreasonable risk of serious damage to [plaintiffs'] health and that [d]efendants acted with deliberate indifference in posing such a risk." *See id.* at 151–153.  Despite these findings, Judge Kollar-Kotelly did not order any inmates to be released.  *Id.* at 163.  Notably, this opinion was issued on April 19, 2020, just over two weeks after "the infection rate in DOC facilities was over seven times the infection rate of the District of Columbia at large."  *Id*. at 153 (internal citation omitted).  Here, by the time Defendant's matter was ripe for resolution—in that it was clear which provision of the Bail Reform Act Defendant sought release under—the spread of the virus within DOC had lessened significantly according to information received by the Court.  Thus, Defendant's release is not warranted on constitutional grounds.

### IV.   Conclusion

Defendant is charged with a serious offense that presents a high risk of danger to some of society's most vulnerable members.  The distribution of child pornography is an insidious crime that repeatedly victimizes children each time the images are shared, and also creates an environment in which new images may be generated.  This second danger is clearly evidenced in this matter as Defendant allegedly sent child pornography to someone he believed was also interested in child pornography in the hopes that this would act as a "down payment," for that other person to send Defendant a picture of that person's minor child.  Statement of Offense at 2.  Given the prevalence of electronic devices and the seriousness of his pending charge, Defendant shall be held without bond pending trial.  In addition, even with his underlying medical conditions and the specter of re-contracting the coronavirus, the undersigned finds that Defendant has not "presented such compelling reasons that effectively override or at least sufficiently counterbalance the findings that originally justified the pretrial detention order,'" and

therefore he should not be temporarily released.  *Davis*, 2020 U.S. Dist. LEXIS 68317 at *9

(quoting *Boatwright*, 2020 WL 1639855, at *5))

## DIRECTIONS REGARDING DETENTION

Defendant is **ORDERED** remanded to the custody of the Attorney General or to the Attorney

General's designated representative for confinement in a corrections facility separate, to the extent

practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

Defendant must be afforded reasonable opportunity for private consultation with defense counsel.

On order of a court of the United States or on request of an attorney for the government, the person in

charge of the corrections facility must deliver Defendant to a United States Marshal for the purpose

of any appearance in connection with a court proceeding

January 29, 2021
DATE

_____
Robin M. Meriweather
United States Magistrate Judge